UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jascha Chiaverini, et al.,                                      Case No. 3:17-cv-2527

                    Plaintiffs,

             v.                                                          MEMORANDUM OPINION
                                                                                    AND ORDER

City of Napoleon, et al.,

                    Defendants.


## I.     INTRODUCTION

On November 16, 2017, Plaintiffs Jascha Chiaverini and Chiaverini, Inc. filed a Complaint in

the Henry County, Ohio Court of Common Pleas.  (Doc. No. 1-1).  Defendants City of Napoleon,

Nicholas Evanoff, David Steward, Jamie Mendez, and Robert Weitzel (collectively, "City

Defendants") removed the matter to this court based on federal question jurisdiction because

Plaintiffs' Complaint alleged, among others, constitutional violations under 42 U.S.C. § 1983.  (Doc.

No. 1).[1]

---

[1] Defendants David and Christina Hill consented to the City Defendants' removal of the case to this
court, (*see* Doc. No. 1-2), but have otherwise not participated in the litigation.  The Henry County,
Ohio Common Pleas Court docket (Case No. 17CV0126) denotes service of the Complaint upon
David Hill on December 1, 2017, and upon Christina Hill on December 23, 2017.  Neither of the
Hill Defendants entered an answer or otherwise responded to the Complaint.  Plaintiffs requested
default judgment against the Hill Defendants on January 18, 2019, (Doc. No. 54), but I denied the
motion without prejudice for failure to comply with Fed. R. Civ. P. 55(a).  (Doc. No. 55).  Practically
speaking, the Complaint does not allege any counts for relief against the Hill Defendants.

On January 23, 2020, the City Defendants filed a motion for summary judgment, (Doc. Nos. 96 & 97), Plaintiffs opposed the motion, (Doc. No. 102), and the City Defendants replied. (Doc. No. 107). Plaintiffs moved to file a surreply, attaching their proposed surreply brief, (Doc. Nos. 110 & 110-1), the City Defendants filed an opposition, (Doc. No. 112), and Plaintiffs replied. (Doc. No. 126).

After reviewing Plaintiffs' motion for leave and the proposed brief, I find Plaintiffs have failed to justify the need for a surreply beyond "[the] party's mere desire to make new arguments, rather than respond to new arguments improperly raised in a reply." *Chartis Specialty Ins. Co. v. Lubrizol Corp.*, No. 1:11 CV 369, 2013 WL 12130642, at *4 (N.D. Ohio Mar. 29, 2013). Each of Plaintiffs' proposed arguments seeks to re-hash theories or facts which the City Defendants have consistently raised throughout the summary judgment briefing. *See Baran v. Med. Device Techs., Inc.*, 666 F.Supp.2d 776, 778 n.2 (N.D. Ohio 2009) (stating "the purpose of a sur-reply is not to permit re-argument after additional reflection."). I deny Plaintiffs' motion for leave to file a surreply, (Doc. No. 110), because it does not address "new submissions and/or arguments" from the reply brief. *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014); *see also First Tech. Cap., Inc. v. BancTec, Inc.*, No. 5:16-CV-138, 2017 WL 2734716, at *1 (E.D. Ky. June 26, 2017) ("Overall, though, '[w]hether to permit a party to file a surreply is a matter left to the trial court's discretion.'") (citation omitted) (alteration in original).

## II.  BACKGROUND

Plaintiff Jascha Chiaverini is the manager at the Diamond and Gold Outlet, a retail jewelry store located in Napoleon, Ohio. (Doc. No. 1-1 at 4). The Diamond and Gold Outlet is owned by Chiaverini, Inc., an Ohio corporation. (*Id.*). Defendants Evanoff, Steward, and Mendez are City of Napoleon police officers. (*Id.*). Defendant Weitzel was employed as the Chief of Police for the City of Napoleon. (*Id.*).

2

On November 16, 2016, while working at the Diamond and Gold Outlet, Jascha purchased a men's ring and a diamond earring from Brent Burns, the purported owner, for $45.[2]  (*Id.* at 5-6). Jascha completed a "buy card,"[3] copied Brent's driver's license, and photographed the ring and earring.  (*Id.* at 6).  Later that day, David and Christina Hill contacted the Diamond and Gold Outlet multiple times regarding a ring they claimed was stolen.  (*Id.*; Doc. No. 97-1 at 1).  Jascha advised David to make a police report but he allegedly refused.  (Doc. No. 1-1 at 6).  To resolve the situation, both the Hills and Jascha called the Napoleon Police Department.  (*Id.*; Doc. No. 97-1 at 1).  The relevant portion of an audio recording of Jascha's conversation with the 911 dispatcher was as follows:

> **Chiaverini:** There's going to be a man calling you making a police report on some jewelry. Okay?
>
> **Dispatcher:** Okay.
>
> **Chiaverini:** And I'm saying this. I believe – and I'm not going to talk to him and I'm not going to get into a pissing battle with the victim or something here. But I believe I may have his property. Okay?
>
> **Dispatcher:** Okay.
>
> **Chiaverini:** But I'm just trying to be cooperative. But he says I'm coming to your store with the police. And I said, sir, you don't come up to my store with the police. Please let them do their job.
>
> \*\*\*
>
> **Chiaverini:** Well, I'm just telling you that – I'm not saying that I have it or I don't, but I want an officer to come and talk to me. Not the damn victim. I know I'm not playing that game because people get mad at me.

(Doc. No. 102-9).  Officers Evanoff and Steward responded to the call.  (Doc. No. 1-1 at 6).

---

[2] Brent Burns later pled guilty to one count of Theft ~~for~~ with respect both the ring and earring in Napoleon Municipal Court. *See State of Ohio v. Brent Burns*, Case No. 16-CRB-1214.  (Doc. No. 97-2).

[3] The "buy card" is a record of sale that includes biographical information of the seller and a description of the items sold. (*See* Doc. No. 102-2).

Once present, Officer Steward remained with David who provided a description of the items and advised that Brent had stolen the items from his home earlier in the week. (Doc. Nos. 102-3 & 102-8). Officer Evanoff, meanwhile, spoke with Jascha, who reported Brent often sold fake jewelry but that today, Brent had stated he had real jewelry to sell. (*Id.*). Jascha provided the "buy card" and photographs of the items to the police. (*Id.*). Officer Evanoff then instructed Jascha not to sell the items as they had been confirmed as stolen. (*Id.*).

Officer Steward authored the narrative supplement regarding this incident on November 16, 2016. (Doc. No. 102-8; Doc. No. 88 at 38). Officer Steward later updated this narrative supplement to include a statement by Jascha to Officer Evanoff "that the reason he bought the ring and kept records regarding the purchase, was because he suspected that it was in fact stolen." (Doc. No. 102-3; *compare* Doc. No. 102-3 *with* Doc. No. 102-8). But Jascha denies ever saying this. (Doc. No. 42-8 at 60-61; Doc. No. 102-17 at 1-2).

Officer Steward justified omitting the statement from the original narrative because he did not believe it to be relevant to the theft investigation involving Brent. (Doc. No. 88 at 83). Plaintiffs allege Officers Evanoff and Steward improperly altered the police report to include this falsified statement. (*See* Doc. No. 102 at 11).

The next day, the Napoleon Police Department issued a "hold letter"[4] to the Diamond and Gold Outlet signed by Officer Steward and Chief Weitzel stating that the ring and earring were stolen. (Doc. No. 102-4). The letter went on to state:

> I am formally requesting that you hold this item as in ORC 4727.12 states [*sic*], as evidence of the crime of Theft.

---

[4] Chief Weitzel testified that at the time he issued the "hold letter" on November 17, 2016, he believed Plaintiffs held the appropriate licensure and were therefore subject to certain statutory requirements. (Doc. No. 93 at 119). The "hold letter" references Ohio Rev. Code § 4727.12 which pertains to pawn brokers but a similar statutory scheme applies to precious metal dealers found in Ohio Rev. Code § 4728.09.

> Please accept this letter as the official request for retaining the items that are
> confirmed to be stolen and the rightful owner being David Hill, 413 Rohrs
> St., in Napoleon, Ohio 43545. Please release these items to David or
> Christina Hill.

(*Id.*).

That same day, Christina came to the Diamond and Gold Outlet to request the return of the items,

but Jascha refused allegedly based on the directives in the "hold letter". (Doc. No. 1-1 at 7).  The

police were again called out to the store.  (*Id.* at 8).

In his report of the incident, Officer Steward stated Jascha refused to relinquish the items to

Christina because they were "his property" and he was within his rights to "put that ring in his

crucible and [take] a torch to it."  (Doc. No. 92-6 at 1).  He also reported Jascha's rationale for not

returning the items was because of David's poor behavior the previous day.  (*Id.*).  While Jascha does

not dispute making these statements in some manner, (*see* Doc. No. 98 at 185, 187), he testified that

his refusal to return the items was based on the statutory language and advice of counsel.  (*Id.* at

192).

On November 19, 2016, Jascha confronted Chief Weitzel outside the police station about

the "hold letter" and what he perceived to be its contradictory directives.  (*Id.* at 200).  Chief Weitzel

recalled Jascha stating that he was not required to comply with the "hold letter" but did not know

the basis for Jascha's stance as he had always complied in the past.  (Doc. No. 93 at 87, 103).

During this conversation, Jascha alluded that he did not have a precious metal dealer license.  (*Id.*).

Jascha also confirmed to Chief Weitzel that he would not release the items to the Hills.  (Doc. No.

98 at 201-02).

Following this conversation, Chief Weitzel reviewed the Ohio Department of Commerce

website and discovered the precious metal dealer license previously issued to the Diamond and Gold

Outlet had been cancelled.  (Doc. No. 93 at 88, 112).  He next instructed his officers to begin an

investigation.  (*Id.* at 112).  Officer Evanoff verified that Diamond and Gold Outlet's precious metal dealer license was cancelled on June 30, 2013.  (Doc. No. 93-12 at 10).

On November 30, 2016, Officer Steward sent an e-mail to the City of Napoleon Law Director with all the relevant police reports, including both the original and updated narrative report. (Doc. No. 92 at 23; Doc. No. 92-3).  Plaintiffs allege that the officers did not disclose the alterations to the police report to the City Law Director at the time.  (Doc. No. 102 at 12).  Thereafter, the City Law Director provided template documents, including a draft search warrant, for the investigating officers to complete; these documents identified the potential criminal offenses.  (Doc. No. 92 at 24-25; Doc. No. 92-1).   After the officers completed the documents, the drafts were reviewed by the City Law Director and a Henry County Prosecutor.  (Doc. No. 92-1 at 30).

Meanwhile, Christina had contacted an assistant prosecuting attorney with the City of Napoleon for help in getting the jewelry back.  (Doc. No. 87 at 4-5).  After consulting with Officers Evanoff and Steward, the attorney recommended Jascha be treated as a "co-victim" to ensure he did not financially suffer from this incident. [5]  (*Id.* at 7). When presented with the "co-victim" option on November 23, 2016 by Officers Evanoff and Steward, Jascha requested the advice of the Diamond and Gold Outlet's attorney, George Rogers.  (Doc. No. 1-1 at 8).

On December 2, 2016, Officer Evanoff applied for, and was granted, a search warrant for the Diamond and Gold Outlet by the Napoleon Municipal Court.  (Doc. Nos. 91-3 & 102-11).  He stated Jascha was in possession of items confirmed to be stolen and had been issued a "hold letter" but refused to return the jewelry.  (Doc. No. 102-12).  Evanoff further stated Chiaverini, Inc., did not possess either a valid precious metal dealer license or a pawn brokers license.  (*Id.*).  The search warrant was executed that same day and the Napoleon Police seized the ring and earring in question,

---

[5]  Assistant Prosecuting Attorney Thomas Manahan indicated it may have been Officer Evanoff who originally proposed this solution.  (Doc. No. 87 at 7).

as well as documents, computers, and other jewelry.  (Doc. No. 1-1 at 15).  Later, Detective Mendez requested search warrants to investigate the contents of the seized computers.  (Doc. Nos. 89-7, 89-8, & 89-9).

Officer Evanoff also filed a probable cause affidavit and a criminal complaint in Napoleon Municipal Court charging Jascha with: (1) money laundering (Ohio Revised Code § 1315.55(A)(1)); (2) Ohio Precious Metals Dealers licensure violations (Ohio Revised Code § 4782.02); and (3) receiving stolen property (Ohio Revised Code § 2913.51(A)).  (Doc. No. 1-1 at 4-5 & 15; Doc. No. 91-1; & Doc. No. 91-4).  In the probable cause affidavit, Evanoff stated Jascha had purchased the jewelry while suspecting it may be stolen, the jewelry had been confirmed stolen yet remained in his possession, and that he was operating the Diamond and Gold Outlet without proper licensure.  (Doc. No. 91-4).

Jascha was arrested on December 2, 2016 and remained in custody until December 5, 2016.  (Doc. No. 1-1 at 5).  Plaintiffs allege Jascha's arrest was illegal because the City Defendants engaged in a concerted effort to mislead the court and the prosecutors by providing falsified information and omitting potentially exculpatory evidence from presentation.

On December 12, 2016, a preliminary hearing was held on the felony money laundering charges before Judge Amy Rosebrook of the Napoleon Municipal Court.  (Doc. No. 42-8).  During the hearing, Officer Evanoff testified he confirmed to Jascha that the jewelry was stolen, a "hold letter" was prepared for the Diamond and Gold Outlet, and that Jascha had purchased the jewelry knowing it may be stolen.  (*Id.* at 8-9).  Judge Rosebrook then heard Jascha's testimony justifying why he retained the items after knowing they were confirmed stolen, that he had retained the items after specific requests from the Napoleon Police to release them to the Hills, and that he never told Evanoff he believed the items were stolen at the time of purchase.  (*Id.* at 47-50, 56-57, 60-61).

At the hearing, Jascha confirmed he did not have a precious metals dealers license but stated he was not required to have one because he was operating under an exemption. (*Id.* at 44-51).  Judge Rosebrook found probable cause existed and bound over all charges for trial.  (*Id.* at 77).  The criminal case against Jascha was later dismissed without prejudice for failure to be timely presented to the grand jury.

The Napoleon Police Department returned the items seized pursuant to the search warrant no later than August 2017, but Jascha alleges it never returned "the police hold letters that were seized."  (Doc. No. 1-1 at 19).  Subsequently, Jascha made a public records request to the City of Napoleon for copies all "police hold letters that had been provided to the Diamond and Gold Outlet."  (*Id.*).  He alleged the City never responded.  (*Id.*).

## III.  STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.* at 323-25.  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go

beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  But "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).  Ultimately, I must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV.    ANALYSIS

Plaintiffs' Complaint alleges the following against all Defendants:

1) Malicious Prosecution

2) False Arrest and False Imprisonment

3) 42 U.S.C. § 1983 violation – unreasonable search and seizure, deprivation of liberty, and malicious prosecution under the 4th and 14th Amendments

4) Civil Conspiracy

    5)   Conspiracy against Rights under 18 U.S.C. § 241

    6)   Deprivation of Rights under 18 U.S.C. § 242

(Doc. No. 1-1 at 19-27).[6]   Additionally, in relation to the unreturned "hold letters," Jascha

demanded their return either by way of replevin (renumbered Count 8) or a writ of mandamus

(renumbered Count 9).  (*Id.*).

### A. *MONELL* LIABILITY OF CITY OF NAPOLEON

Plaintiffs purport to bring claims under 42 U.S.C. § 1983 against the City of Napoleon (Doc.

No. 1-1 at 21-22).  The City is entitled to summary judgment on Plaintiffs' § 1983 claims.

The City "may not be sued under § 1983 for an injury inflicted solely by its employees or

agents." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury that the government as an entity is

responsible under § 1983." *Id.*

Yet merely identifying a policy or custom is insufficient.  Rather, "a plaintiff must show the

municipal action was taken with the requisite degree of culpability and must demonstrate a direct

causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs

of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).  A plaintiff can establish culpability by

establishing the municipality "intentionally deprived [him] of a federally protected right." *Id.* at 405.

The Complaint does not identify any City policy or custom which caused the alleged

constitutional deprivations.  In their opposition, Plaintiffs assert the City's liability arises from its

policy regarding modification of police reports which Chief Weitzel has allowed to devolve into "the

---

[6]  Plaintiffs' Complaint inadvertently misnumbers Count 7 (No Qualified Immunity) as a second
Count 6, and subsequently misnumbers the remainder of their counts.  (Doc. No. 1-1 at 23).  For
ease of reference, I have corrected the errors here and will refer to the counts in accordance with
these corrected numbers.

wholesale rewriting of police reports with no discernible means of determining the 'basics' of who wrote what when in violation of due process." (Doc. No. 102 at 41-42). Chief Weitzel's testimony established that the creation and modification of police reports is addressed by the Napoleon Police Training Manual and that modifications to all reports are tracked via a computerized audit trail. (Doc. No. 93 at 51-54; Doc. No. 93-2 at 24-25).

To succeed on a failure to train or supervise claim, a plaintiff must prove: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir. 2006). Deliberate indifference can be established by a municipality's failure to act following repeated complaints or by failing to adequately train employees for foreseeable situations. *Ouza v. City of Dearborn Heights, Mich.,* 969 F.3d 265, 287 (6th Cir. 2020).

Plaintiffs have provided no citations to record evidence in support of any of these elements, and thus have failed to raise a genuine issue of material fact as to their failure to train claim. (*See* Doc. No. 102 at 41-42). Importantly, Plaintiffs have provided no evidence to satisfy the rigorous standard necessary to establish deliberate indifference under either available theory. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). Moreover, this lack of evidence undermines any suggestion that Plaintiffs' alleged injuries bear a direct causal relationship to the policy. *See Waad v. Willis*, Case No. 16-13362, 2018 WL 6505371, at *6 (E.D. Mich. Dec. 11, 2018) (noting "[a] policy which enables, contributes, allows, permits, or which is coincidental, incidental, or proximately related to the complained injury is insufficient."). Therefore, the City of Napoleon is entitled to summary judgment on Plaintiffs' § 1983 claims.

### B.  PROBABLE CAUSE

The viability of Plaintiffs' claims for malicious prosecution, false arrest and false imprisonment, and unreasonable search and seizure are each based upon a finding of lack of probable cause.  Because I conclude that probable cause existed in this case, all of these claims are subject to summary judgment.

City Defendants first argue that the finding of probable cause made by Judge Rosebrook at the preliminary hearing prevents re-litigation of this issue.  (Doc. No. 97 at 29).  But since this finding was not immediately ripe for appeal and the charges against Jascha later were dismissed, "[his] inability to test a probable-cause finding in an appellate court drains the finding of preclusive effect."  *Bradley v. Reno*, 749 F.3d 553, 556 (6th Cir. 2014).

"The test for probable cause is not reducible to precise definition or quantification."  *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal citation omitted).  Instead, it is a "practical and common sensical standard" based on the "totality of circumstances."  *Id.*

The arrest in this case was made pursuant to a warrant, which is normally a complete defense to a federal constitutional claim for false arrest.  *See Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 712 (6th Cir. 2005).  "When an arrest is made pursuant to a warrant, a plaintiff must prove (1) that the officer applying for the warrant, either knowingly and deliberately or with reckless disregard for the truth, made false statements or omissions that created a falsehood and (2) that such statements or omissions were material to the finding of probable cause."  *Halash v. City of Kirtland, Ohio*, 574 F. App'x 624, 629 (citing *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)).

First, Plaintiffs allege Evanoff misled Judge Rosebrook as to the licensure charge by failing to include a statement that Plaintiffs may be entitled to a "low sales" exemption from this statute.  (Doc. No. 102 at 34-37).  The affidavits state that the precious metal dealers license issued to

Chiaverini, Inc. expired on June 30, 2013, and that operations had continued at the Diamond and Gold Outlet without a license.  (*See* Doc. Nos. 91-3 & 91-4).

There is nothing false about these statements, which constitute a sufficient basis for probable cause to believe that the statute had been violated.  *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983) ("The totality of the circumstances test requires us to evaluate the probabilities of finding criminal activities based on the evidence provided in the affidavit, as opposed to requiring that the evidence in the affidavit guarantees the discovery of criminal activity.").  Evanoff's failure to include Plaintiffs' unsubstantiated claim of an exemption is not fatal because "there is no requirement to include exculpatory evidence in a search warrant affidavit."  *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998).  Further, there is no evidence that Evanoff's failure to reference the potential exemption was done with any improper motive; particularly, as of the date Evanoff applied for the warrant, no evidence had been presented to the Napoleon Police that Plaintiffs did, in fact, qualify for an exemption from the statute.[7]

Second, Plaintiffs allege Evanoff withheld the existence of the "hold letter" from Judge Rosebrook at the time he sought the arrest and search warrants against Plaintiffs on December 2, 2016, thus undermining the probable cause determination.  (Doc. No. 1-1 at 10-11).  A review of the affidavits in support of these warrants shows that "hold letter" was referenced in the search warrant affidavit but not in the affidavit for the arrest warrant.  (*See* Doc. Nos. 91-3 & 91-4).  But Plaintiffs' argument falls short, as these documents were presented simultaneously to Judge Rosebrook and she would have the benefit of all this information at the time she evaluated probable cause.

Lastly, Plaintiffs have taken issue with Evanoff's statement in the probable cause affidavit that Jascha suspected the jewelry was stolen at the time he purchased them.  (Doc. No. 91-4).  As

---

[7] It is important to note that at no point in this litigation have Plaintiffs provided evidence that they qualify for or have been authorized by the Department of Commerce to operate under the "low sales" exemption.

13

the basis for this statement, Evanoff testified Jascha informed him Brent usually sold "fake" jewelry, and that Jascha completed a buy card because of his suspicions surrounding the jewelry.  (Doc. No. 91 at 68).  Jascha confirmed he had discussed Brent's prior sales of mostly costume jewelry with Evanoff. (Doc. No. 98 at 158-60).  But Jascha denies ever telling Evanoff he suspected the jewelry to be stolen at the time of purchase.  (Doc. No. 102-17 at 1-2).

Plaintiffs argue that Evanoff's statement regarding Jascha's knowledge was false, as evidenced by its omission from the original police report taken on November 16, 2016.  (Doc. No. 102 at 26-27).  Steward, who authored both the original and updated reports, testified he omitted this information because: "At the time, Jascha wasn't under investigation for receiving stolen property on the 16th" and "I don't necessarily know that it's important to call out a local business owner for receiving stolen property in a theft report at the time of the theft.  Brent Burns was the suspect, not Jascha."  (Doc. No. 88 at 57-60).

Considering the above, Plaintiffs fail to show the affidavits' contents were knowing or reckless falsities.  At the time the warrants issued, Plaintiffs were operating without a precious metal dealers license, and while they claimed an exemption, Plaintiffs did not substantiate that exemption to the Napoleon Police.  Next, the existence of the "hold letter" was not concealed from Judge Rosebrook at the time she reviewed the warrants as it was explicitly referenced in the search warrant affidavit.  (Doc. No. 91-3).  Nor was Evanoff's suspicion regarding Jascha's knowledge unreasonable considering the facts Evanoff knew at the time.  *See Hinchman v. Moore,* 312 F.3d 198, 204 (6th Cir. 2002) (probable cause is based on "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense."); *see also Moran v. Marker*, 889 F. Supp. 284, 287 (E.D. Mich. May 2, 1995) (finding probable cause may issue on the basis of an officer's inferences

from facts, provided "the inference . . . is not so insufficient as to ensure that no officer of reasonable competence would have concluded the arrest warrant should issue.").

Even if I were to conclude Evanoff's statement regarding Jascha's knowledge was false, it does not doom the issuance of the warrants.  *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *see also Burleigh v. City of Detroit*, 80 F. App'x 454, 458 (6th Cir. 2003) ("This alleged exaggeration of the facts need not detain us, however, if other undisputed facts support the state court's probable cause determination").  Whether Jascha knew or suspected the items were stolen at the time of purchase does not negate his continued retention of the items after it had been determined they were stolen.

Under Ohio law, the offense of receiving stolen property includes those who "retain" the "property of another knowing or having a reasonable cause to believe that the property has been obtained through the commission of a theft offense."  Ohio Rev. Code § 2913.51.  At the time Judge Rosebrook reviewed the affidavits on December 2, 2016, the Napoleon Police had confirmed the items had been stolen from the Hills and Jascha had refused to return the items.[8]  (Doc. No. 91-3).  Thus, probable cause existed for the warrants to issue on the receiving stolen property charge. *See United States v. Reagan*, 401 F. App'x 14, 16 (6th Cir. 2010) ("[K]nowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendant.") (internal citation omitted).

The probable cause for the issuance of the warrants on December 2, 2016, is backstopped by Judge Rosebrook's findings at the preliminary hearing on December 12, 2016.  (*See* Doc. No. 42-8); *see also Bradley v. Reno*, 749 F.3d 553, 558 (6th Cir. 2014) ("A state judge's finding of probable

---

[8]  Further, Jascha admitted that, after the Hills' phone calls on November 16, 2016, he suspected the items to be stolen, which was why he contacted the police.  (Doc. No. 1-1 at 6; Doc. No. 98 at 183; & Doc. No. 102-9).

cause suggests, even if it does not prove, that the officer behaved reasonably in thinking he had probable cause.").

While Judge Rosebrook was ultimately determining whether probable cause for the money laundering charge existed, she necessarily evaluated whether probable cause existed for the underlying criminal offense – receiving stolen property.  Judge Rosebrook heard testimony from Evanoff on the issuance and contents of the "hold letter,"[9] that Jascha refused to return the items to the Hills, and Evanoff's basis for asserting Jascha knew the items were stolen at the time he purchased them.  (Doc. No. 42-8 at 6-9).  Evanoff also testified that Plaintiffs could have been entitled to an exemption from the licensure statute, but he had not been provided any documentation evidencing that exemption.  (*Id.* at 12-13).

Judge Rosebrook then heard from Jascha.  He confirmed he did not have a precious metals dealers license but again claimed an exemption.  (*Id.* at 44-51).[10]  He testified further justifying why he retained the items after knowing they were confirmed stolen, that he had retained the items after specific requests from the Napoleon Police to release them to the Hills, and that he never told Evanoff he believed the items were stolen at the time of purchase.  (*Id.* at 47-50, 56-57, 60-61).  At the hearing, Judge Rosebrook had the ability to evaluate his claim for an exemption, the contents of the "hold letter" and make a credibility determination regarding Jascha's knowledge of the items' provenance, and at what point it formed.

In her ruling, Judge Rosebrook found the receiving stolen property charge constituted a sufficient basis for the money laundering charge and found probable cause as to all charges.  (*Id.* at 74-77).  She specifically ruled:

---

[9]  Judge Rosebrook accepted the "hold letter" into the record as evidence.  (*See* Doc. No. 42-8 at 68).

[10] Jascha attempted to provide a letter from the Department of Commerce as evidence of his exemption but Judge Rosebrook refused to admit the letter into evidence as it was incomplete and unauthenticated.  (*See* Doc. No. 42-8 at 66-67).

You can argue whether the statute under 1315.55 is overbroad, vague[,] can cram other numerous violations into it and make it a felony, . . . but the fact of the matter is they are there.  They are on the books, [ ] the Ohio Legislature saw fit to make those criminal violations and so this Court is obligated to follow those laws. . . . I think that a corrupt activity and this statute, that with the receiving stolen property violation, does fall under the definition of a corrupt activity as contemplated by 1315.55.  So I believe that the receiving stolen property is related to this offense and that it constitutes the furthering of the alleged [ ] corrupt activity. . . . I do not see the ambiguity of the letter sent to the defendant . . . The last sentence of that letter states, please release these items to David or Christina Hill.  It was further testified that Ms. Hill went to the store with two uniformed police, and that letter was signed by the Chief of Police, the testimony was that Ms. Hill and two officers in uniform went to the store and were not released that property. . . . Certainly with the sending of this letter [to] the defendant, I find that there was probable cause to believe that these items were stolen and he retained them contrary to the clear statement of the Chief of Police and the patrolmen whose case this was.

(*Id.* at 75-76).

Accordingly, I conclude Plaintiffs have failed to produce sufficient evidence that the warrants were issued without probable cause or on the basis of knowingly or recklessly false statements.

### C.  MALICIOUS PROSECUTION

Plaintiffs allege the City Defendants violated Jascha's Fourth Amendment rights by "pursuing and continuing a malicious prosecution."  (Doc. No. 1-1 at 21).

The Sixth Circuit recognizes claims for malicious prosecution in violation of the Fourth Amendment. This claim "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006).  Malicious prosecution is a distinct tort that "remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process." *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (emphasis in original).  To succeed on a malicious prosecution claim under § 1983, the plaintiff must prove: (1) a criminal prosecution was initiated against him and the defendants made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a

consequence of the legal proceeding, he suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in his favor. *Sykes*, 625 F.3d at 308-09.

As discussed above, probable cause existed for the issuance of the arrest and search warrants on December 2, 2016, and subsequently, Judge Rosebrook concluded probable cause existed to bind all charges over for prosecution following the preliminary hearing on December 12, 2016. While a plaintiff may overcome such determinations if the same were "premised on an officer's [ ] material misrepresentations to the court," *Gregory v. City of Louisville*, 444 F.3d 725, 728 (6th Cir. 2006), I already have concluded Plaintiffs have failed to show the arrest and search warrants issued on the basis of knowing or reckless falsehoods.

Further, the alleged deficiencies were not present at the preliminary hearing. Judge Rosebrook had the opportunity to review the "hold letter", and to hear and weigh testimony from Jascha and Evanoff. Regardless, Judge Rosebrook's ruling makes clear she did not rely upon Evanoff's testimony regarding Jascha's knowledge at the time of purchase to find probable cause, but instead on Jascha's conduct after being issued the "hold letter", mainly his refusal to return the items to the Hills after they had been confirmed stolen by the Napoleon Police. (Doc. 42-8 at 76); *see also Molnar v. Care House*, 359 F.App'x 623, 627 (6th Cir. 2009) ("Even accepting [the] allegation that [the officer] knowingly supplied the magistrate with false information, the state court did not rely on her testimony to establish probable cause.") (internal citation omitted).

Therefore, Plaintiffs' claims for malicious prosecution under § 1983 fail as a matter of law because probable cause existed for both the arrest and continuation of legal proceedings.[11]  *See Howse*

---

[11]  Plaintiffs concede that Chiaverini, Inc. cannot maintain actions for malicious prosecution or false arrest and imprisonment. (*See* Doc. No. 102 at 51); *see also Pierzynowski v. Police Dep't City of Detroit*, 941 F. Supp. 633, 640 (E.D. Mich. 1996) (42 U.S.C. § 1983 claims are "personal action[s] cognizable only by the party whose civil rights are violated.") (citing *Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir.1984)). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citation omitted).

*v. Hodus*, 953 F.3d 402, 410 (6th Cir. 2020).  Further, because a claim for malicious criminal

prosecution under Ohio law requires a finding of lack of probable cause, these claims also fail.  *See*

*Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990).

### D.  FALSE ARREST AND FALSE IMPRISONMENT

A federal claim for false arrest arises under the Fourth Amendment.  *Id.* at 409.  To succeed

a "plaintiff [must] prove that the arresting officer lacked probable cause to arrest the plaintiff."

*Voyticky,* 412 F.3d at 677. "When a false-imprisonment claim arises out of an alleged false arrest – as

it does in this case – those claims are identical." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020).

Similarly, an action for false arrest under Ohio law requires a showing of an unlawful detention.

*Morrison v. Horseshoe Casino*, 157 N.E.3d 406, 433 (Ohio Ct. App. 2020).  "[A]n arrest based on

probable cause is a lawful detention and, thereby, serves to defeat both a claim of false arrest and a

claim of false imprisonment." *Id.*

As I discussed above, probable cause existed to arrest Jascha on the receiving stolen

property charge and thus defeats all his claims for false arrest.  *See House*, 953 F.3d at 409 ("What

matters is the validity of the *arrest* (the seizure) and not the validity of every *charge* (the potential

justifications for the seizure.)") (emphasis in original).  The City Defendants are entitled to summary

judgment on Plaintiffs' claims for false arrest and false imprisonment claims under § 1983 and state

law.  (*See* Doc. No. 1-1 at 20-22).

### E.  UNLAWFUL SEARCH AND SEIZURE

Plaintiffs also assert a Fourth Amendment unlawful search and seizure claim.  (Doc. No. 1-1

at 21).  In this case, the search was completed pursuant to a warrant.  The individual City

Defendants were entitled to rely on the judicial determination of probable cause unless Plaintiffs

could show Evanoff obtained the warrant on the basis of knowingly or recklessly false statements.

*Peffer v. Stephens*, 880 F.3d 256, 268 (6th Cir. 2018).  As Plaintiffs have failed to raise a genuine issue

of material fact with regard to the falsity of Evanoff's submissions, I conclude the City Defendants also are entitled to summary judgment on this claim.

### F. CIVIL CONSPIRACY

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. *Hensley v. Gassman,* 693 F.3d 681, 695 (6th Cir. 2012). To prove the claim, it must be shown "there was a single plan, that the alleged coconspirator[s] shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). "To establish a 'conspiracy' under a § 1983 claim, a plaintiff must first demonstrate a constitutional deprivation." *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 496 (6th Cir. 2007) (citing *Hooks*, 771 F.2d at 943-44). Ohio law also requires the existence of an underlying unlawful act to establish a civil conspiracy. *O'Brien v. Olmsted Falls,* 2008-Ohio-2658, 2008 WL 2252527, ¶ 41 (Ohio Ct. App. June 2, 2008).

While neither party devoted much attention to this claim in their summary judgment briefing, Plaintiffs have failed to establish an underlying constitutional violation. Therefore, their federal and state claim of civil conspiracy also must fail as a matter of law. *See Bauss,* 233 F. App'x at 496; *see also Wolford v. Sanchez,* 2005-Ohio-6992, 2005 WL 3556681, ¶ 22 (Ohio Ct. App. Dec. 30, 2005).

### G. VIOLATIONS OF 18 U.S.C. §§ 241 & 242

Plaintiffs allege claims under 18 U.S.C. §§ 241 & 242. (Doc. No. 1-1 at 23). These statutes are criminal laws which do not provide for a private right of action. *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003). *See also Bray El v. City of Euclid*, No. 1:16CV2160, 2017 WL 2797389, at *9 (N.D. Ohio June 26, 2017) and *Johnson v. Kentucky*, No. 4:21-CV-44, 2021 WL 2908113, at *3

(W.D. Ky. July 9, 2021). Therefore, City Defendants are entitled to summary judgment on Counts 5 and 6.

## H. REPLEVIN

At Count 8, Plaintiffs allege the City Defendants unlawfully seized property belonging to the Diamond and Gold Outlet. (*See* Doc. No. 1-1 at 25). The City Defendants argue this issue was already decided in a state court replevin action and thus is barred by the doctrine of res judicata. (*See* Doc. No. 97 at 26-27). Plaintiffs did not address City Defendants' res judicata argument in their opposition brief. (*See* Doc. No. 102).

"A federal court 'must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered.'" *Cremeans v. Taczak*, No. 2:19-CV-2703, 2019 WL 5420256, at *4 (S.D. Ohio Oct. 23, 2019) (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)). Under Ohio law, res judicata is established when: (1) there is a final, valid decision on the merits by a court of competent jurisdiction; (2) there is a second action that involves the same parties, or their privies, as the first action; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of a transaction or occurrence that was the subject matter of the first action. *Slough v. Telb*, No. 3:06CV2592, 2010 WL 2044872, at *2 (N.D. Ohio May 21, 2010) (quoting *Portage Cnty. Bd. of Comm'rs v. Akron,* 109 Ohio St.3d 106, 123, 846 N.E.2d 478 (2006)).

On March 11, 2019, the Henry County, Ohio Court of Common Pleas entered two separate judgment entries in the replevin action entitled *Chiaverini, Inc. v. City of Napoleon*, Case No. 17-cv-0056. The Common Pleas Court dismissed Chiaverini, Inc.'s claims for replevin as to the "hold letters" and the jewelry.[12] Chiaverini, Inc. filed a notice of appeal only as to the ruling on the

---

[12] A court may take judicial notice of public records, such as the Henry County, Ohio Common Pleas Court docket, available at https://www.henrycountyohio.gov/254/Clerk-of-Courts. *See Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021).

jewelry's replevin.  The Third District Court of Appeals later dismissed the case, and the Ohio

Supreme Court refused to exercise jurisdiction over Chiaverini, Inc.'s appeal request.[13]

It is apparent after reviewing the docket in the state court replevin case and the allegations in

the Complaint that elements 1, 3, and 4 of the res judicata test are satisfied.  In the underlying state

court action, there was a final decision on the merits as to Chiaverini, Inc.'s claims for replevin and

those claims arose out of the same factual circumstances currently at issue in this litigation.  The

only issue for my consideration is whether this action involves the same parties or their privies, as

those involved in the state court action.

It is clear Chiaverini, Inc. and the City of Napoleon were both parties to the state court

action.  Furthermore, because the Complaint alleges the individual Defendants acted in their official

capacities, (Doc. No. 1-1 at 4), they share a sufficient mutuality of interest to be in privity with the

City of Napoleon for res judicata purposes.  *Slough*, 2010 WL 2044872, at *3 (citing *Kirkhart v. Keiper*,

101 Ohio St.3d 377, 379, 805 N.E.2d 1089, 1093 (2004)).  Accordingly, res judicata operates to

preclude re-litigation of the replevin claims by Chiaverini, Inc. against the City Defendants, and

therefore the City Defendants are entitled to summary judgment on Count 8.

As to Jascha, he has taken the position that he is only the manager at the Diamond and Gold

Outlet and therefore would have no possessory rights to make a claim for replevin in his individual

capacity as to either the "hold letters" or the jewelry.  (Doc. No. 102 at 7); *see Hershey v. Edelman*,

2010-Ohio-1992, ¶ 16, 932 N.E.2d 386 (Ohio Ct. App.) ("A replevin action is a possessory action

filed on behalf of one entitled to possession, against one having possession and control of the

property at the time the suit begins.").  Therefore, to the extent made, I also dismiss, as a matter of

---

[13] *See Chiaverini, Inc. v. City of Napoleon*, 3rd Dist. Case No. 7-19-04 (Henry Co. App. Oct. 7, 2019).

law, Jascha's claims for replevin in his individual capacity, as he lacks a cognizable right to possess the items.

### I. PUBLIC RECORDS

Plaintiffs allege on September 26, 2017, Jascha delivered a public records request for "copies of police hold letters that had been provided to the Diamond and Gold Outlet[,]" and that as of November 16, 2017, the City had not provided any documents or written response to his request. (Doc. No. 1-1 at 19). City Defendants argue I can take judicial notice of the Henry County Court of Common Pleas' ruling in the replevin action which found that the City of Napoleon did not take or retain possession of any "hold letter" or file of "hold letters" when the search warrant was executed on December 2, 2016, to resolve the issue. (Doc. No. 97 at 27).

But the conclusion of the Henry County Court of Common Pleas is not equivalent to the request made by Plaintiffs. Plaintiffs requested copies of any "hold letters" provided to the Diamond and Gold Outlet not just the "hold letter" allegedly seized at the time of the warrant. While the "hold letter" seized in the warrant is certainly one responsive document to this request, it may not be the only responsive document, particularly, as Chief Weitzel testified "hold letters" had previously been sent to the Diamond and Gold Outlet to which the business has always complied. (*See* Doc. No. 93 at 87 & 93-94). Thus, taking the facts in light most favorable to the Plaintiffs, there is a genuine issue of material fact as to whether there are outstanding public records which the City of Napoleon has not disclosed, and the failure to do so without justification may entitle Plaintiffs to statutory damages. *See* Ohio Rev. Code § 149.43; *see also Aarti Hosp., LLC v. City of Grove City, Ohio*, No. 206-CV-886, 2007 WL 912137, at *4 (S.D. Ohio Mar. 23, 2007).

### J. SUPPLEMENTAL JURISDICTION

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state-law claims where, as here, "the district court has dismissed all claims over which it has

original jurisdiction."  In deciding whether to exercise supplemental jurisdiction, a court weighs

several factors including judicial economy, convenience, fairness, and comity.  *Gamel v. City of*

*Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010).  While district courts have broad discretion in

deciding whether to exercise supplemental jurisdiction, there is a presumption in favor of dismissing

supplemental claims.  *See, e.g., id.,* at 952; *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir.

2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial

economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly

deciding state law issues.").

In this instance, the single remaining claim arises from an alleged statutory violation of state

law and has not been adequately addressed by the parties in the summary judgment briefing.

Accordingly, I decline to exercise supplemental jurisdiction over the remaining state law claim in

Count 9.  *See Arnold v. City of Columbus*, No. 2:08-CV-0031, 2011 WL 1303593, at *28 (S.D. Ohio

Mar. 31, 2011), *aff'd,* 515 F. App'x 524 (6th Cir. 2013).

## V.  CONCLUSION

For the foregoing reasons, City Defendants' motion for summary judgment is granted as to

Counts 1-6 and Count 8; and denied as to Count 9.  (Doc. No. 96).  I decline to exercise

supplemental jurisdiction as to the state law claim in Count 9, and remand this remaining count to

the state court for further resolution.  Further, Plaintiffs' motion for leave to file a surreply is denied.

(Doc. No. 110).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge